UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TIMOTHY SHEPARD, | ) | 3:12-cv-00554-HDM-VPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| ERIC K. SHINSEKI, SECRETARY, DEPARTMENT OF VETERAN AFFAIRS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court are the plaintiff's motion for partial summary judgment as to liability (#64) and the defendant's motion for summary judgment (#67, #68). The defendant has opposed the plaintiff's motion for partial summary judgment (#67, #68) and the plaintiff has replied (#72). The plaintiff has opposed the defendant's motion for summary judgment (#73) and the defendant has replied (#79).

Plaintiff Shepard was an employee at the Department of Veteran Affairs ("VA") in Reno, Nevada, and worked as a Veteran Service Representative ("VSR") Public Contact. (*See* First Am. Complaint

1

1 1.[1])  In 2010, the leadership at the Reno Veterans Affairs Regional
2 Office made the decision to move the Public Contact VSR team to a
3 different VSR team, the Predetermination team.  (*See* Def. Mot. 3-
4 4.[2])  This decision was based upon an "adjust[ment to] the workload
5 of certain jobs so that the agency could run more efficiently and
6 save money."  (Def. Mot. 3.)  Plaintiff Shepard suffers from the
7 disabilities of dyslexia and dysgraphia, and alleges that while he
8 was able to perform effectively in his position on the VSR Public
9 Contact team despite his disabilities, his disabilities made it
10 impossible for him to carry out his job responsibilities on the VSR
11 Predetermination team, even with accommodations.  (*See* First Am.
12 Compl. 1-2; P. Mot. 6.)  Plaintiff Shepard notified the VA of his
13 disabilities when he was informed of the impending transfer.  (*See*
14 First Am. Compl. 5.)  Plaintiff Shepard repeatedly requested that
15 he be allowed to remain on the VSR Public Contact team.  (*See*
16 First. Am. Compl. 3-6; P. Mot. 3; D. Mot. 6.)  The defendant denied
17 these requests, but asserts that the VA provided numerous other
18 reasonable accommodations to the plaintiff.  (*See* Def. Mot. 6-7.)
19 Ultimately, the VA offered the plaintiff a position back on the
20 Public Contact team, but as a Claims Assistant/Intake Specialist at
21 lower pay rate from his job as a VSR.  (*See* Def. Mot. 7.)  The
22 plaintiff accepted this position, but then resigned prior to
23 beginning his new job.  (*Id.*)  The plaintiff alleges that he was

---

[1]  For all documents in the record to which the court cites, page numbers refer to ECF page numbers, rather than to any page numbers on the documents themselves.

[2]  Because the defendant filed a single document to serve as both its motion for summary judgment and its opposition to the plaintiff's motion for partial summary judgment (*see* ECF Docs. # 67, #68), the court will hereinafter cite to both the defendant's motion and the defendant's opposition to the plaintiff's motion as "Def. Mot."

2

"forced" to "quit his employment" due to discriminatory treatment. (*See* First Am. Compl. 3-4.)  Prior to his resignation, and during the course of the events already enumerated, the plaintiff initiated various administrative claims at the VA, which he pursued to varying degrees.  (*See* Def. Mot. Dismiss 2-3; Def. Reply Mot. Dismiss Maraian Dec. 2.)

On October 15, 2012, the Plaintiff filed suit under the Rehabilitation Act, alleging disability discrimination based upon lack of a reasonable accommodation.  (*See* Compl. 3-6.)  On July 3, 2012, the plaintiff filed an amended complaint that added a retaliation claim under the Rehabilitation Act.  (*See* First. Am. Compl. 7-8).

On August 19, 2013, the defendants filed a motion to dismiss (#53).  On February 19, the court granted the motion in part and denied it in part, dismissing various claims, grounds of claims, and defendants from the action.  (*See* ECF Doc. #71)  Following the court's order regarding the defendant's motion to dismiss, only one claim remains before this court:  that the VA failed to provide plaintiff Shepard with a reasonable accommodation from November 4, 2010 to July 18, 2012, forcing him to quit his job.  (*Id.*)  The court also dismissed defendants Russell and Bittler from the suit, so that only defendant Shinseki remains.  (*Id.*)

On December 11, 2013, the plaintiff filed a motion for partial summary judgment on liability (#64), which is presently before the court.  On January 6, 2014, the defendant filed a motion for summary judgment and opposition to the plaintiff's motion for summary judgment (#67, 68).  The defendant's motion for summary judgment is also before the court.  The plaintiff replied to the

defendant's opposition to his motion for summary judgment (#72) and opposed the defendant's motion for summary judgment (#73) on February 26, 2014.  The defendant replied to the plaintiff's opposition to the defendant's motion for summary judgment (#79) on April 17, 2014.

**STANDARD:**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)*.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).  "A mere scintilla

of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); s*ee also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

If the parties file cross-motions for summary judgment, the court must consider each party's motion separately and determine whether that party is entitled to a judgment under Rule 56. In making these determinations, the court must evaluate the evidence offered in support of each cross-motion. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

**ANALYSIS:**

**I.  Consideration of Exhibits Attached to Plaintiff's Motion**

The defendant argues in opposition to the plaintiff's motion for partial summary judgment that several of the exhibits offered by the plaintiff in his motion "have not been authenticated, and . . . contain or constitute hearsay."  (Def. Mot. 20.)  Specifically, the defendant objects to plaintiff's Exhibits 2, 4 (last two pages), 6, 7, 8,[3] and 11.  The defendant claims that because these exhibits are not properly authenticated, they are inadmissible and should be disregarded by the court.  (*Id.*)  The defendant cites Fed.R.Evid. 801 (defining hearsay) and 802 (precluding admission of hearsay), as well as to *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989), for the proposition that "[i]t is well established that unauthenticated documents cannot be considered on a motion for summary judgment."  (*Id.*)  The defendant also argues that the plaintiff's declaration (P. Mot. Ex. 12) "is inadmissible because it does not comply with 28 U.S.C. § 1746, which requires that a declaration be signed."  (Def. Mot. 20.)  The court addresses this evidentiary issue before addressing the other arguments in the cross-motions for summary judgment, as it has a bearing on which evidence is available to the court in ruling on the motions.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988).  However, Ninth Circuit case law much more

---

[3] The defendant claims that the "[p]laintiff has included two Exhibit 8s and Defendant[s] object[s] to both sets," but the court has only been able to locate one plaintiff's Exhibit 8.  (Def. Mot. 20.)

6

recent than *Hal Roach* makes clear that "we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  The court looks not at whether the evidence is currently presented in an admissible form, but instead at whether it "'could be presented in an admissible form at trial.'"  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (quoting *Fraser*, 342 F.3d at 1037; citing *U.S. Bancorp v. Fraser*, 541 U.S. 937 (2004)).  Evidence presented at the motion for summary judgment stage can contain hearsay, for example, yet still be appropriately considered by the court if it can be presented at trial in an admissible format (for example, with testimony).  *See, e.g., Fraser*, 343 F.3d at 1037; *Fonseca*, 374 F.3d at 846.  Moreover, the multiple means to authentication permitted by the Fed.R.Evid. 901(b) and 902 may also be considered by the court.  *See Orr v. Bank of America*, 285 F.3d 764, 777-778, 777 n.22-23, 778 n.24 (9th Cir. 1997).

While it is possible that some or all of the plaintiff's Exhibits 2, 4, 6, 7, 8, and 11 may be appropriately excluded from consideration at this juncture based on inadmissibility at the trial stage or lack of authentication, the defendants have not articulated which exhibits should be excluded for which reasons. (*See* Def. Mot. 20.)  The exhibits to which the defendant objects include letters, emails, excerpts from manuals and job descriptions, and deposition testimony, all different types of evidence that may be authenticated in different ways and to which different rules of evidence and different case law may apply.  *See, e.g., Orr*, 285 F.3d at 773-79; P. Mot. Ex. 2, 4, 6, 7, 8, 11.

7

However, the defendant has articulated no standards this court should employ in determining the admissibility of the exhibits to which he objects, and has not offered arguments as to why any individual exhibit should be excluded. (*See* Def. Mot. 20.) The defendant must articulate appropriate objections to evidence it seeks to exclude. The court will therefore consider the plaintiff's exhibits 2, 4, 6, 7, 8, and 11 in making its ruling.

However, the defendant has appropriately objected to the consideration of the plaintiff's declaration. The defendant is correct that the plaintiff's declaration does not comply with 28 U.S.C. § 1746, which requires that an unsworn declaration, if executed within the United States, must include language, "in substantially the following form:" "I declare . . . under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C § 1756(2). While a declaration need only "'substantially' comply with the statute's suggested language" (*Commodity Futures Trading Com'n v. Topworth Intern., Ltd.*, 205 F.3d 1107 (9th Cir. 1999)), the plaintiff's declaration has no signature at all and no language stating that the declaration is made under penalty of perjury (*see* P. Mot. Ex. 12). Accordingly, the court will not consider the plaintiff's declaration in making its determination. *See Tearfie v. Whittlesea Blue Cab Co.*, 176 F.3d 485, at *1 n.4 (9th Cir. 1999) (in reviewing a grant of summary judgment *de novo*, the court "d[id] not consider the four statements and one affidavit submitted . . . because they were not made under the penalty of perjury as required by 28 U.S.C. § 1746").

8

**II.   Proper Format of Defendant's Motion and Opposition**

The plaintiff objects to the defendant's filing of his opposition to the plaintiff's motion for partial summary judgment and his motion for summary judgment as a single document. (*See* P. Opp'n 2, 15; D. Reply 3-4.) The plaintiff claims that "no such procedure is allowed by law." (P. Opp'n 2.)

The plaintiff specifically stipulated, as part of a joint stipulation for an extension of time, that the "[d]efendants anticipate filing their Motion for Summary Judgment and their Opposition to Plaintiff's Motion for Summary Judgment as one document." (ECF Doc. #66; *see also* P. Reply. 3-4.) The plaintiff therefore had notice that the defendant would be filing in this manner, and agreed to such an approach in advance of his filing.

The court therefore finds no defect in the defendant's filing of both his motion for summary judgment and his opposition to the plaintiff's motion for partial summary judgment as a single document.

**III.   Disability Discrimination Based on Reasonable Accommodation**

Following the court's order (#71) granting in part and denying in part the defendant's motion to dismiss (#53), the plaintiff's only remaining claim is for disability discrimination under § 501 of the Rehabilitation Act, which is codified as 29 U.S.C. § 791, based upon the VA's alleged failure to make a reasonable accommodation for his disabilities, forcing him to resign. (*See* First. Am. Compl. 3; ECF Doc. # 71 at 26-27.)

> A distinction exists between § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 . . . and § 504, 29 U.S.C.A. § 794 . . . Both prohibit discrimination on the basis of handicap. Section 791(b) obligates federal employers to provide reasonable accommodation for the handicapped and to develop

>    and implement affirmative action plans for handicapped
>    employees . . . Section 794, in contrast, prohibits the
>    exclusion of "otherwise qualified individuals" from government
>    activities or programs receiving federal funds "solely by
>    reason of their handicap." *Mantolete v. Bolger*, 767 F.2d 1416,
>    1421 (9th Cir.1985).

*Johnston v. Horne*, 875 F.2d 1415, 1418 (9th Cir. 1989), overruled on other grounds by *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990). Section 501 requires that the federal government serve as a "model employer" (29 U.S.C. § 791), and the duty imposed on the federal government and its agencies by § 501 is "the affirmative obligation to accommodate," a mandate that "goes beyond mere nondiscrimination" (*Buckingham v. United States*, 998 F.2d 735, 739 (9th Cir. 1993) (internal quotation marks and citations removed)). Because plaintiff Shepard was a federal employee at the VA, he has a private cause of action under § 501, but not under § 504, of the Rehabilitation Act. *Johnston*, 875 F.2d at 1418.

"[T]he same standards are used to determine whether unlawful discrimination has occurred" under both the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). *Livingston v. Fred Meyer Stores, Inc.*, 388 F. App'x 738, 741 (9th Cir. 2010) (citing *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir.2000) ("analyzing a Rehabilitation Act accommodation claim under the same standard as the ADA")). The federal regulations regarding the Rehabilitation Act specifically state that "the standards used to determine whether section 501 of the Rehabilitation Act . . . has been violated . . . shall be the standards applied under . . . the Americans with Disabilities Act." 29 C.F.R. § 1614.203. These standards are set forth in the ADA regulations at 29 C.F.R. § 1630. *Id.*; 29 C.F.R. § 1630.

Under 29 C.F.R § 1630.2(o)(4), a covered entity "is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual."  There are therefore three elements to reasonable accommodation under § 501 of the Rehabilitation Act: "'(1) plaintiff must be a "qualified" handicapped individual; (2) the agency must make "reasonable accommodation" to the handicap; and (3) the accommodation need not be made if it would impose an "undue hardship."'"[4]  *Bateman v. U.S. Postal Serv.*, 32 F. App'x 915, 917 (9th Cir. 2002) (quoting *Fuller v. Frank*, 916 F.2d 558, 560 (9th Cir.1990)); see also *Pickens v. Astrue*, 252 F. App'x 795, 796 (9th Cir. 2007).

The plaintiff bears the burden of showing that he is qualified to perform the essential functions of the job, and the employer bears the burden of proving inability to accommodate. *Mantolete*, 767 F.2d at 423-24.  "Once the employer presents credible evidence that accommodation would not reasonably be possible, the plaintiff has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Id.* at 424.

The plaintiff, in his motion, has not articulated a clear test or standard for analyzing his claims. (*See generally* P. Mot.)  The

---

[4] *Bateman* and *Fuller* discuss the content of the former 29 C.F.R. § 1614.203, which was the relevant regulation promulgated under § 501 of the Rehabilitation Act at the time of those decisions.  "In 2002, 29 C.F.R. § 1614.203 was amended to simply provide that the rehabilitation act uses the standards for employment discrimination provided by the ADA." *Scott v. City of Yuba City*, No. CIV. S-08-873 LKK/GGH, 2009 WL 4895549, at *11 n. 14 (E.D. Cal. Dec. 11, 2009).  However, the explanation of reasonable accommodation under the former 29 C.F.R.§ 1614.203 contained the same three elements that the current explanation of reasonable accommodation under 29 C.F.R. § 1630.02 contains, so case law involving the former regulatory language is still applicable to the case at hand.  *See Bateman*, 32 F. App'x 915, 916, for a discussion of the former text of 29 C.F.R. § 1614.203.

11

defendant, on the other hand, has articulated a test that is used to analyze certain disability discrimination claims, but is not the correct test for disability discrimination claims under the Rehabilitation Act based on lack of reasonable accommodation.  See D. Mot. 8; *Bateman*, 32 Fed.Appx. at 916-17.  In particular, the plaintiff need not, as the defendant argues, show that an adverse employment decision was taken against him.  *Id.*   Instead, the court must examine whether the employer provided reasonable accommodation and, if it did not, whether it failed to do so because of undue hardship.  *Bateman*, 32 Fed.Appx. at 19-17; *Fuller* 916 F.2d at 560; *Pickens*, 252 F. App'x at 796.

Nevertheless the court finds that the defendant has presented evidence showing that "there is no genuine issue as to any material fact and the [defendant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The plaintiff, on the other hand, has failed to demonstrate the same.

*a.  Qualified Individual*

The defendant concedes that the plaintiff is disabled within the meaning of the Rehabilitation Act.  *(See* D. Mot. 9.)  However, the defendant argues that the plaintiff is not a "qualified individual" because he has, on multiple occasions, conceded that he could not perform the essential functions of a VSR on the Predetermination team, "with or without accommodation." (*See, e.g.*, D. Mot. 9-10; D. Mot., Vance Decl, Ex. P (Shepard Dep.) 12-13.; First Am. Compl. 5-6.)

Under the ADA, and consequently under the Rehabilitation Act, a "qualified" individual with a disability is an individual who "satisfies the requisite skill, experience, education and other

12

job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). "This definition 'includes individuals who could perform the essential functions of a reassignment position, with or without reasonable accommodation, even if they cannot perform the essential functions of the current position.'" *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001) (quoting *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1111 (9th Cir. 2000), *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)). Moreover, "[t]he plaintiff bears the burden of proving that he is qualified." *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1108 (9th Cir. 2000).

Based on plaintiff's admissions that he could not perform the essential functions of a VSR on the predetermination team, with or without accommodation, the plaintiff was clearly not qualified for his position as a VSR on the Predetermination team. *See* 29 C.F.R § 1630.2(m). However, the plaintiff asserts that he "is a qualified individual under the Rehabilitation Act, who can perform the essential job functions of a VSR in Public Contact even if he cannot perform the work in Pedetermination." (D. Mot. 9.) The defendant maintains that the plaintiff must have been able to perform the essential elements of the position he *currently* held at the time of suit in order to meet the definition of a "qualified individual" (P. Mot. 10), but the plaintiff need actually only have been able to perform the essential functions of his current position *or* of a reassignment position." 29 C.F.R. § 1630.2 (m); *Hutton*, 273 F.3d at 892.

13

Ultimately, the VA offered, and the plaintiff accepted, a reassignment to the position of a lower-paid Intake Specialist on the Public Contact team as a reasonable accommodation. (Def. Mot. 7.) By definition, the position of Intake Specialist on the Public Contact team is therefore a "reassignment position" under *Hutton*. *Hutton*, 273 F.3d at 892. Though the plaintiff resigned before starting his new position (Def. Mot. 7), neither party has alleged that he would have been unable to perform the essential functions of the position with or without reasonable accommodation. *See generally* D. Mot.; P. Mot; 29 C.F.R. 1630.2(m). In fact, the plaintiff asserts that he performed similar work without issue for seven years as a VSR Public Contact, and the defendant does not dispute this claim. (*See, e.g.*, P. Mot. 9; *see generally* D. Mot.)

The plaintiff has therefore shown that there is no genuine issue of material fact that he is a qualified individual with a disability under the Rehabilitation Act.

b.  *Reasonable Accommodation*

It is undisputed that, although the defendant did not grant the plaintiff's request to be placed back in his former position as a VSR Public Contact, the defendant did participate in the "interactive process" as required by the Rehabilitation Act in order to "identify, if possible, a reasonable accommodation that would permit [plaintiff Shepard] to retain his employment." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 (9th Cir. 2006) (citing *Allen v. Pacific Bell,* 348 F.3d 1113, 1115 (9th Cir. 2003); 29 C.F.R. 1630.2(o)(3). The defendant engaged in extensive correspondence with the plaintiff in an attempt to identify potential and further accommodations. (*See, e.g.*, Def. Mot. Bittler Decl. Ex. F, H; Def.

14

Mot. Duran Decl. Ex. C, D, E, G.)  In fact, the defendant provided the plaintiff with a litany of assistive technology devices and software, regular breaks, one-on-one training, a mentor, and other accommodations, seemingly in line with the recommendations provided by Dr. JoAnne Krumpe, a psychologist who evaluated the plaintiff. (D. Mot. 6-7; D. Mot. Duran Decl. Ex. D; D. Mot. Bittler Decl. Ex. R at 9-10; P. Mot. 9.)

Ultimately, after all these attempted reasonable accommodations failed, the defendant offered the plaintiff the position of Intake Specialist back on the Public Contact team.  (D. Mot. 7.)  This position was at a GS-7 pay rate, whereas the plaintiff's position as a VSR was at a G-11 pay rate.  (P. Mot. 5; D. Mot. 7, 13.) The plaintiff accepted this position, but then resigned before the transfer occurred.  (D. Mot. 7.)

Throughout the accommodation process, the plaintiff continued to insist that he could not adequately perform his job responsibilities and continued to request transfer back into the VSR Public Contact position.  (*See* Def. Mot. 11-12 (citing to a large volume of exhibits all evidencing plaintiff Shepard's repeated requests to be transferred back to his VSR Public Contact position.))  The plaintiff acknowledged during the administrative proceedings that the *only* accommodation he requested was re-assignment back to the Public Contact team as a VSR.  (D. Mot 12; D. Mot. Steinmetz Decl. Ex. N at 20.)  In fact, the plaintiff's entire remaining claim for relief and all his arguments in support thereof are based not on the VA's failure to reasonably accommodate him at all, but instead on the VA's failure to reasonably accommodate him specifically by declining to reinstate him back to

15

his former position as a VSR Public Contact.  (*See generally* P. Mot; P. Mot. 10; First. Am. Compl. 3-6.)  Thus, the only question before the court in determining whether the defendant provided a reasonable accommodation to the plaintiff is whether transferring the plaintiff back to his former position as a VSR Public Contact *was* a reasonable accommodation.  *See* 29 C.F.R. § 1630.2 (m); *Fuller*, 916 F.2d at 560.

"A "reasonable accommodation" under the ADA and the Rehabilitation Act may include "job restructuring ... reassignment to a vacant position ... and other similar accommodations."  29 C.F.R. 1630.2(o)(2)(ii).  The EEOC's interpretive guidance regarding the ADA's employment provisions advises that reassignment as a reasonable accommodation should, "[i]n general . . . be considered only when accommodation within the individual's current position would pose an undue hardship."  29 C.F.R. § 1630 App.  Furthermore, reassignment should be "to an equivalent position, in terms of pay, status, etc.," but can be to a "lower graded position, if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation."  *Id.*

Importantly,

> A "reasonable accommodation" has not, however, been held to include creation of a new job. To the contrary . . . the ADA does not impose a duty to create a new position to accommodate a disabled employee. *See Willis v. Pacific Maritime Ass'n,* 162 F.3d 561, 567 (9th Cir.1998) ("In order for reassignment to a vacant position to be reasonable, an existing position must be vacant: there is no duty to create a new position for the disabled employee.").

*Wellington v. Lyon Cnty. Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir.

16

1999). Moreover, "[a]lthough [an employer is] not required to find another job for an employee who is not qualified for the job he or she was doing, [it] cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 289 n.19 (1987).

Though the plaintiff continues to claim that his former position as a VSR on the Public Contact team remained "vacant" and "still available" (D. Mot. 4, 6, 8, 10), the plaintiff has greatly mischaracterized deposition testimony from Mr. Bittler[5] and Mr. Duran[6] in making this argument. The evidence shows that due to a workload adjustment at the VA, leadership at the VA in Reno transferred the VSRs in Public Contact to the Predetermination team and put lower-salaried Intake Specialists in the Public Contact positions as a cost-saving measure.[7] (D. Mot. 3-4, 12-15; D. Mot.

---

[5] *Compare* P. Mot. 4 (asserting that Mr. Bittler admitted in his deposition that the "[p]laintiff's position as a VSR in Public Contact still existed and essentially was vacant") *with* P. Ex. 5 at 13 (cited to portion of Mr. Bittler's deposition, in which Mr. Bittler explains that the VSR position still existed, and public contact positions still existed, but the VSR Public Contact position no longer existed). *See also* D. Mot. 12-14 (discussing various other places in Mr. Bittler's deposition in which he clarifies that the VSR Public Contact position no longer existed).

[6] Compare P. Mot. 6, 8 (asserting that Mr. Duran stated that the VSR Public Contact position in Reno was essentially vacant or unfilled) with P. Ex. 10 at 3-4 (cited to portion of Mr. Duran's deposition, in which he states that the VSR public contact position was not vacant or unfilled, but that the position of "VSR," spread over various other teams, still existed). *See also* D. Mot. 14-15 (discussing and quoting from Mr. Duran's deposition testimony).

[7] The plaintiff expends a significant amount of effort in his motion, opposition, and reply arguing that the VA leadership's decision to transfer the VSR Public Contacts to the Predetermination team was somehow improper and in violation of a federal directive. (*See* P. Mot. 8-10; P. Opp'n 8-14; P. Reply 4-6, 12-13.) This line of argument is irrelevant to the case at hand; even if the decision was somehow improper, such impropriety would not show that the defendant failed to make a reasonable accommodation or that the plaintiff's request to be transferred would not cause undue hardship under the relevant legal standards. Accordingly, the court declines to address the propriety or lack thereof of the Reno VA's internal

17

Bittler Decl. 2.) The position of VSR in Public Contact was simply not available at the time of the plaintiff's requests because it did not exist as a position at the VA in Reno anymore. *Id.*

Given that the VSR Public Contact position did not exist anymore, the Rehabilitation Act "d[id] not impose a duty" on the defendant to reassign the plaintiff to that position, as doing so would have been "creat[ing] a new position to accommodate a disabled employee." *Wellington,* 187 F.3d at 1155. While the VA could not deny to plaintiff Shepard "alternative employment opportunities reasonably available under the employer's existing policies," the position plaintiff Shepard continued to request was *not* reasonably available under the VA's existing policies. *Sch. Bd. of Nassau Cnty.,* 480 U.S. at 289 n.19. Thus, the accommodation requested by plaintiff Shepard was not reasonable. *See Willis,* 162 F.3d at 567 ("In order for reassignment to a vacant position to be reasonable, an existing position must be vacant") (quoted by *Wellington,* 187 F.3d at 1155).

As advised by the EEOC guidance, the defendant attempted to accommodate the plaintiff in his current position, and then - when a job that would satisfy him at his current pay grade was not available - finally offered him a job at a lower pay grade. *See* 29 C.F.R. § 1630 App; Def. Mot. 7. The defendant has provided substantial evidence that the plaintiff's requested position no longer existed, and the defendant has provided no evidence to rebut the defendant's assertions.[8]

---

restructuring.

[8] *See supra* note 7. In response to the defendant's assertions, the plaintiff has vigorously argued that VA's decision to remove the VSR Public Contact position was somehow improper. *See* P. Mot. 8-10; P. Opp'n 8-14; P. Reply 4-6, 12-13.) However, whether the VA's internal restructuring was

18

There is therefore no genuine issue of material fact that plaintiff Shepard was not denied a reasonable accommodation when the defendant refused to reinstate him in his former position as a VSR Public Contact.

b.  *Undue Hardship*

Because the accommodation requested by the plaintiff was not in fact reasonable, an examination of the issue of "undue hardship" is unnecessary.  Under the Rehabilitation Act, an employer must make a *reasonable* accommodation absent undue hardship, but has no obligation whatsoever to make an *un*reasonable accommodation.  *See* 29 C.F.R § 1630.2(o)(4)*; Bateman*, 32 F. App'x at 917) (quoting *Fuller*, 916 F.2d at 560); *see also Pickens*, 252 F. App'x at 796.

Consequently, even when viewing the evidence as required "'in the light most favorable to the party opposing the motion,'" the court finds that plaintiff has failed to show that there is a genuine issue of material fact as to whether the defendant discriminated against him based upon his disability by failing to provide him a reasonable accommodation as required by the Rehabilitation Act.  *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).  There is therefore "no genuine issue as to any material fact and the [defendant] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

"proper" or not has no bearing on whether the position was available or not. Additionally, while the plaintiff maintains that the deposition testimony of Mr. Bittler and Mr. Duran supports his theory that the position was actually existing and vacant, the deposition testimony in question clearly supports the defendant's, rather than the plaintiff's, explanation of the relevant events.  *See supra* notes 5-6.

**CONCLUSION:**

In accordance with the foregoing the plaintiff's motion for partial summary judgment on liability (#64) is **DENIED** and the defendant's motion for summary judgment (#68)  is **GRANTED**.

**IT IS SO ORDERED.**

DATED: This 30th day of June, 2014.

*Howard D. McKibben*
_____
UNITED STATES DISTRICT JUDGE